IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 12-36187** |
| **ATP Oil & Gas Corporation,** | § | |
| | § | **Chapter 11** |
| **Debtor.** | § | |
| | § | **Judge Marvin Isgur** |
| _____ | § | |
| | | |
| **Diamond Offshore Company,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **ADVERSARY NO.  12-03425** |
| **v.** | § | |
| | § | |
| **ATP Oil & Gas Corporation,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**ATP OIL & GAS CORPORATION'S ANSWER AND AFFIRMATIVE DEFENSES
TO DIAMOND OFFSHORE COMPANY'S COMPLAINT AND
COUNTERCLAIM FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Debtor/Defendant ATP Oil & Gas Corporation ("ATP") submits this Answer to Plaintiff

Diamond Offshore Company's ("Diamond") Complaint for Declaratory Judgment and

Alternative Relief against ATP (the "Complaint") pursuant to Federal Rules of Civil Procedure

8(b) and 8(c) as applied through Federal Rule of Bankruptcy Procedure 7008.  To the extent any

allegations in the Complaint are not expressly admitted, they are denied.  Further, in accordance

with Rule 8(b), any averment by ATP that it lacks knowledge or information sufficient to form a

belief about the truth of an allegation shall have the effect of a denial.

No answer is required with respect to the headings, prayers for relief and other contents

of the Complaint that do not set forth allegations of fact and are not included within numbered

paragraphs as required by Rule 10(b).  Consequently, ATP has not restated, nor is it responding

to, the footnotes included in the Complaint.  In fact, pursuant to Rule 10(b), all footnotes in the Complaint should be stricken.  *E.g.*, *Holmes v. Gates*, No. 1:08-CV-2152, 2010 WL 956412, at *1 n.1 (M.D. Pa. Mar. 11, 2010) (concluding that footnotes "run counter to the pleading requirements" of Fed. R. Civ. P. 10(b); footnotes in the complaint at issue were stricken).

## I.
## JURISDICTIONAL AND CORE ALLEGATIONS

1.      This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) as a proceeding arising in, arising under, or related to the ATP bankruptcy case. This Court also has exclusive jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(e)(1) because this proceeding involves a question of whether certain property is property of the bankruptcy estate. This Court also has retained jurisdiction pursuant to the Order entered at Case No. 12-36187. Dkt. 191.

**ANSWER:**  ATP admits the allegations in paragraph 1 of the Complaint.

2.      This Court has personal jurisdiction over ATP because ATP is a Texas resident and the contracts giving rise to Diamond's property interests that are the subject of this case were negotiated and executed in the State of Texas, require enforcement in this State, and provide for jurisdiction in this State over the parties for any action or proceeding arising out of or relating to the contracts. Personal jurisdiction also exists because ATP's continuous and systematic contacts in the State of Texas. Furthermore, there is personal jurisdiction over ATP pursuant to Fed. R. Bankr. P. 7004(f).

**ANSWER:**  ATP admits the allegations in paragraph 2 of the Complaint.

3.      This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A)(concerning the administration of the estate), 157(b)(2)(B)(concerning allowance or disallowance of claims), 157(b)(2)(K)(determining the validity, extent, or priority of liens), 157(b)(2)(M)(concerning the use of property), and 157(b)(2)(O)(proceeding affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor relationship). Pursuant to 28 U.S.C. § 157(c)(2), Diamond consents to the bankruptcy judge hearing, determining and entering appropriate orders and judgments, subject to review under 28 U.S.C. § 158.

**ANSWER:**  ATP admits the allegations in the first sentence in paragraph 3 of the Complaint. ATP further consents to the bankruptcy judge hearing, determining and entering appropriate orders and judgments, subject to review under section 158 of the Judicial Code, 28 U.S.C. § 158.

## II.
## VENUE

4.   Pursuant to 28 U.S.C. § 1409(a), venue of this proceeding is proper in the Southern District of Texas because that is the venue of the ATP bankruptcy case; venue is also proper in this district based on 28 U.S.C. § 1409(e).

**ANSWER:**  ATP admits the allegations in paragraph 4 of the Complaint.

## III.
## PARTIES

5.   Plaintiff Diamond has its principal place of business located at 15415 Katy Freeway, Suite 100, Houston, Texas 77094.

**ANSWER:**   On information and belief, ATP admits the allegations in paragraph 5 of the Complaint.

6.   Defendant ATP is debtor and debtor-in-possession in the above captioned bankruptcy case. ATP is a publicly owned corporation organized under the laws of the state of Texas.

**ANSWER:**  ATP admits the allegations in paragraph 6 of the Complaint.

7.   Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(3), Defendant ATP may be served by mailing a copy of the summons and this complaint by first class mail postage prepaid to ATP Oil & Gas Corporation 4600 Post Oak Place, Suite 100, Houston, TX 77027, Attention: Albert L. Reese, Jr., Chief Financial Officer, who is an officer, managing or general agent, or agent authorized by law to receive service of process. Pursuant to Federal Rule of Bankruptcy Procedure 7004(b)(9), Defendant ATP, as debtor, may be served by mailing a copy of the summons and this complaint by first class mail postage prepaid to the address shown in the debtor's bankruptcy petition: ATP Oil & Gas Corporation 4600 Post Oak Place, Suite 100, Houston, TX 77027, Attention: Albert L. Reese, Jr., Chief Financial Officer.  Pursuant to Federal Rule of Bankruptcy Procedure 7004(g), service is also being made on Defendant debtor's attorneys, Charles Stephen

Kelley, c/o Mayer Brown LLP, 700 Louisiana St. Ste 3400, Houston, TX 77002, and Timothy Aaron Million c/o Munsch Hardt Kopf & Harr, P.C., 700 Louisiana, Suite 4600, Houston, TX 77002.

**ANSWER:** ATP admits the allegations in paragraph 7 of the Complaint.

## IV.
## CONDITIONS PRECEDENT

8.      All conditions precedent necessary to maintain this action have occurred or been performed.

**ANSWER:** ATP lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint and thus denies those allegations.

## V.
## FACTS

**A.      ATP**

9.      Defendant ATP is a Texas corporation with its principal place of business and principal office in Harris County, Texas located at 4600 Post Oak Place, Suite 100, Houston, Harris County, Texas 77027. ATP is involved in the acquisition, development, and production of oil and natural gas properties.

**ANSWER:** ATP admits the allegations in the first sentence of paragraph 9 of the Complaint, and admits that it is involved in, among other activities, the acquisition, development and production of oil and natural gas properties and otherwise denies the allegations of paragraph 9 of the Complaint.

**B.      The Conveyance to Diamond**

10.      On May 22, 2009, pursuant to the Original Farmout Agreement (defined below and described in Section C below), ATP executed and delivered a Conveyance of Overriding Royalty Interest, effective May 22, 2009 (the "**Original Conveyance**") to Diamond which provided for, among other things, the conveyance to Diamond of an overriding royalty interest (the "**ORRI**") in certain offshore oil and gas leases (the "**Subject Interests**") and "the Hydrocarbons in and under that may be produced and saved from the Subject Interests equal to the Net Profit Amounts attributable to the Subject Interests." A true and correct copy of the Conveyance is attached hereto as Exhibit **A**; see § 1.1.

4

**ANSWER:** ATP admits that it entered into agreements styled "Conveyance of Overriding Royalty Interest" and "Farmout Agreement," which were effective in accordance with their terms, and admits that a true and correct copy of the "Conveyance of Overriding Royalty Interest" is attached as Exhibit A to the Complaint. ATP respectfully refers the Court to the contracts for the contents thereof and otherwise denies the allegations of paragraph 10 of the Complaint.

       11.     ATP and Diamond executed five amendments to the Original Conveyance. True and correct copies of these five amendments to the Original Conveyance are attached hereto as Exhibits **B** through **F**. The Original Conveyance and the five amendments are referred to collectively as the "**Conveyance**." Attached as Exhibit **G** is the Farmout Agreement dated May 22, 2009, between ATP and Diamond (the "**Original Farmout Agreement**"). Attached as Exhibit H are the Amended and Restated Farmout Agreement, Amendment No. 1 to Amended and Restated Farmout Agreement, and Amendment No. 2 to Amended and Restated Farmout Agreement (together with the Original Farmout Agreement, collectively the "**Farmout Agreement**"). Attached as Exhibit I are (i) Amendment to Domestic Daywork Drilling Contract - Offshore dated May 22, 2009, between ATP and Diamond, (ii) Amended & Restated Amendment to Domestic Daywork Drilling Contract - Offshore entered into March 30, 2010, to be effective as of May 22, 2009, (iii) Second Amended & Restated Amendment to Domestic Daywork Drilling Contract - Offshore, entered into March 25, 2011, to be effective as of May 22, 2009, and (iv) Amendment No. 1 to Second Amended & Restated Amendment to Domestic Daywork Drilling Contract - Offshore, entered into and effective May 25, 2011 (collectively the "**Drilling Contract Amendments**").

**ANSWER:** ATP admits that it entered into the agreements listed in paragraph 11 of the Complaint, respectfully refers the Court to those documents for their terms, and admits that true and correct copies of those agreements are attached to the Complaint, except that a final executed copy of the "Second Amendment to Conveyance of Overriding Royalty Interest" is not included in Exhibit C to the Complaint, a final executed copy of the "Third Amendment to Conveyance of Overriding Royalty Interest" is not included in Exhibit D to the Complaint, a true and correct

copy of the "Fifth Amendment to Conveyance of Overriding Royalty Interest" is not included in Exhibit F to the Complaint, a final executed copy of the "Farmout Agreement" is not included in Exhibit G to the Complaint, a final executed copy of the "Amendment No. 1 to Amended and Restated Farmout Agreement" is not included in Exhibit H to the Complaint, and final executed copies of the "Amendment to Domestic Daywork Drilling Contract" and "Second Amended & Restated Amendment to Domestic Drilling Contract" are not included in Exhibit I to the Complaint.  ATP otherwise denies the allegations of paragraph 11 of the Complaint.

> 12.     Diamond's ORRI is "a non-operating, non-expense-bearing limited overriding royalty interest in and to the Subject Interests (being a real property interest), free of all cost, risk and expense of exploration, development, improvement, production, operation, [among other activities]. . . and other handling of the Subject Interests or the Hydrocarbons attributable thereto." *See* Ex. A at §1.2. The Original Conveyance provides that "[t]his Conveyance is an absolute conveyance of a real property interest," thereby vesting title in Diamond as of May 2, 2009. *Id.*  Pursuant to the Original Conveyance, Diamond held title to the ORRI and its share of Hydrocarbons produced from the Leases. *See* Ex. A § 1.7.

**ANSWER:**  ATP respectfully refers the Court to the "Conveyance of Overriding Royalty Interest" for the contents thereof and otherwise denies the allegations of paragraph 12 of the Complaint.

> 13.     Diamond can only look to the Net Profit Amounts for satisfaction and discharge of its ORRI, and ATP is not personally liable for the payment and discharge of Diamond's ORRI other than for the delivery and payment of the Net Profit Amounts, if any, to Diamond. *See* Ex. A § 1.4; Ex. G § 2.1. While Diamond as a property interest owner accepted the ownership risk that its property interest might not have sufficient Hydrocarbon reserves to satisfy and discharge its ORRI, Diamond did not accept the risk that ATP would convert the Net Profit Amounts.

**ANSWER:**  ATP respectfully refers the Court to the applicable agreements for the contents thereof and otherwise denies the allegations of paragraph 13 of the Complaint.

> 14.     To identify Diamond's property and assist in keeping it separate, ATP was required to establish a Net Profit Account. *See* Ex. A § 3.2. ATP is required to pay Diamond the Net Profit Amounts within thirty (30) days next following the close

of each calendar month (a "**Payment Month**") during which it receives any ORRI production proceeds. *See* Ex. A § 3.1. The Net Profit Amounts are the lesser of (i) the credit account balance in the Net Profit Account as of the last day of the Payment Month most recently ended or (ii) the credit account balance in the Payment Account as of the last day of the Payment Month most recently ended. *Id.* The credit balance in the Payment Account provides a ceiling on the Net Profit Amount for any Payment Month. The credit balance in the Payment Account has always been equal to or greater than the credit balance in the Net Profit Account. It will remain greater than the credit balance in the Net Profit Account until the Payment Month when Diamond's ORRI terminates. *See* Ex. A §§ 1.3(a) and 3.3. Thus, until the Payment Month in which the ORRI terminates, the Net Profit Amount ATP is obligated to deliver and pay to Diamond on account of its ORRI should be equal to the credit account balance in the Net Profit Account.

**ANSWER:** ATP respectfully refers the Court to the "Conveyance of Overriding Royalty Interest" for the contents thereof and otherwise denies the allegations of paragraph 14 of the Complaint.

15. Each Payment Month, the Net Profit Account is (a) credited with the "NP Percentage" (i.e. 27%, or 1% in the case of the MC 711 #5 well) of the Gross Proceeds (generally gross production proceeds) ATP received during the Payment Month from the Subject Interests and (b) debited with the NP Percentage of Lease Operating Expenses and Permitted Deductions ATP incurred during the Payment Month (the "**ATP Deduction Amount**"), with the ATP Deduction Amount being subject to reduction (but not below zero) by the NP Percentage of Other Proceeds received by ATP, all as more fully provided in the Conveyance. As a result of the Conveyance, (i) Diamond was conveyed and owns a share of the NP Percentage of the Gross Proceeds for each Payment Month equal to the Net Profit Amount and (ii) ATP retained the right to deduct the ATP Deduction Amount from the NP Percentage of the Gross Proceeds for each Payment Month.

**ANSWER:** ATP respectfully refers the Court to the "Conveyance of Overriding Royalty Interest" for the contents thereof and otherwise denies the allegations of paragraph 15 of the Complaint.

16. ATP conveyed the ORRI to Diamond free of all cost and expense of the Subject Interests and the Hydrocarbons attributable thereto. ATP is not authorized to use, borrow, appropriate or transfer Diamond's Net Profit Amount proceeds attributable to its ORRI for any purpose (including the payment of ATP's costs and expenses with respect to the Subject Interests or any other properties or

business of ATP), except to deliver the proceeds to Diamond in accordance with the terms of the Conveyance. *Id*.

**ANSWER:**   ATP respectfully refers the Court to the "Conveyance of Overriding Royalty Interest" for the contents thereof and otherwise denies the allegations of paragraph 16 of the Complaint.

C.   **Farmout Agreement**

17.   On August 4, 2008, ATP and Diamond entered into a Domestic Daywork Drilling Contract - Offshore dated August 4, 2008 (the "**Drilling Contract**") under which (i) Diamond agreed and committed to conduct drilling and related operations on oil and gas leases owned by ATP using a drilling unit and personnel provided by Diamond (the "**Drilling Services**") for one year or the time necessary to complete operations on six wells, whichever was longer (the "**Term**") and (ii) ATP agreed and committed to utilize Diamond's Drilling Services for the Term and to pay Diamond the applicable dayrate per 24 hour day for a minimum of 365 days during the Term.

**ANSWER:**  ATP admits that it entered into an agreement styled "Domestic Daywork Drilling Contract," which was effective in accordance with its terms.  ATP respectfully refers the Court to this agreement for the contents thereof and otherwise denies the allegations of paragraph 17 of the Complaint.

18.   On May 22, 2009, ATP and Diamond entered into the original Drilling Contract Amendment and the Original Farmout Agreement under which (i) ATP, as farmor, agreed "to make, contemporaneously with the execution of [the Original Farmout Agreement], a present unequivocal and absolute conveyance of an overriding royalty interest to Diamond, as farmee," by executing and delivering the Original Conveyance which granted Diamond title to a share of hydrocarbon production proceeds from certain oil and gas lease interests of ATP on which Diamond agreed to perform the Drilling Services pursuant to the original Drilling Contract Amendment and (ii) Diamond, as farmee, agreed to perform the Drilling Services pursuant to the original Drilling Contract Amendment for the development of said lands and to look solely to the proceeds of its ORRI for satisfaction and discharge of all dayrates (other than $75,000 per day) that would otherwise have been paid in cash under the Drilling Contract for such Drilling Services. ATP remained obligated to pay in cash $75,000 per day of the dayrates accruing under the Drilling Contract, which portion of the dayrate was not recoverable under the ORRI.

8

**ANSWER:** ATP admits that it entered into agreements styled "Amendment to Domestic Drilling Contract" and "Farmout Agreement," which were effective in accordance with their terms. ATP respectfully refers the Court to these agreements for the contents thereof and otherwise denies the allegations of paragraph 18 of the Complaint.

> 19. Whenever dayrates for Drilling Services performed by Diamond under the Drilling Contract were invoiced to ATP under the Drilling Contract, the portion of such dayrates for which Diamond was required to look solely to the proceeds of its ORRI for satisfaction were debited to a "Contribution Account" maintained by Diamond under the Farmout Agreement and credited to the Payment Account maintained by ATP under the Conveyance. In 2011, Diamond completed performance of all Drilling Services required under the Drilling Contract Amendments and the Farmout Agreement. The final invoice for dayrates for Drilling Services performed by Diamond under the Drilling Contract was invoiced to ATP in 2011.

**ANSWER:** ATP admits that it put a portion of the amounts invoiced by Diamond for drilling services in a Contribution Account. At the time of the original conveyance of the ORRI, the parties agreed to convert approximately $116,400,000 in accrued accounts payable for past drilling services performed by Diamond on the properties into the initial contribution toward the ORRI account, and thereafter such amount was increased by invoices for drilling services to be provided in the future by Diamond. ATP lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 19 of the Complaint and thus denies those allegations. ATP admits the allegations in the last two sentences of paragraph 19 of the Complaint.

**D.** **Overriding Royalty and Net Profits Interests Are Interests In Real Property**

> 20. The Outer Continental Shelf Lands Act, 43 U.S.C. 1331, *et seq.* ("OCSLA") provides that the laws of the adjacent state apply to the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon,

"[t]o the extent that [such laws] are applicable and not inconsistent with [the OCSLA] or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted." *See* 43 U.S.C. § 1333(a)(2)(A); *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990) ("We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary."); *Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) ("Congress declared that '[t]o the extent that they are applicable and not inconsistent with [federal law],' the laws of the adjacent states are 'the law[s] of the United States' on the OCS.") (citing 43 U.S.C. § 1333(a)(2)(A)). The ORRI relates to operations conducted on certain outer Continental Shelf leases located in federal waters in the Gulf of Mexico off the coast of, and adjacent to, Louisiana. Although the OCSLA and the regulations thereunder determine the title ATP acquired from the United States of America pursuant to the underlying federal leases, neither the OCSLA and the regulations thereunder nor other federal laws determine Diamond's and ATP's respective rights and title under the ORRI. Instead, Diamond's and ATP's rights are determined under the laws of the State of Louisiana to the extent they are applicable.

**ANSWER:** ATP admits that "OCSLA and the regulations thereunder determine the title ATP acquired from the United States of America pursuant to the underlying federal leases" as stated in paragraph 20 of the Complaint. ATP otherwise avers that the allegations of paragraph 20 of the Complaint constitute legal conclusions to which no response is required and otherwise denies the allegations of paragraph 20.

21.    Under the Louisiana Mineral Code, La. R.S. § 31:1, *et seq.*, mineral rights are real rights, incorporeal immovables, and alienable. A mineral lease (e.g., an oil and gas lease) is a basic mineral right. *Id.* Louisiana statutory law recognizes that a lessee under a mineral lease may create dependent mineral rights such as overriding royalty interests, net profits interests and other non-operating interests. *See*, La. R.S. § 31:171 ("A co-owner of the lessee's interest in a mineral lease may create a dependent right such as an overriding royalty, production payment, net profits interest, or other non-operating interest out of his undivided interest without the consent of his co-owner."); Official Comment, La. R.S. § 31:171 ("Nonoperating interests of this kind are passive income interests . . . ."); La. R.S. 10:9-102(d)(14) (" 'Mineral rights' means a real right governed by Title 31 of the Louisiana Revised Statutes of 1950, including mineral servitudes, mineral leases, mineral royalties, overriding royalties, production payments, and net profits

interests."); La. R.S. § 31:126 ("An interest created out of the mineral lessee's interest is dependent on the continued existence of the lease and is not subject to the prescription of nonuse."); Official Comment, La. R.S. § 31:126 ("It has been held that overriding royalties and similar interests carved out of the working interest are appendages of the working interest and dependent upon it.").

**ANSWER:** ATP avers that the allegations of paragraph 21 of the Complaint constitute legal conclusions to which no response is required, and otherwise denies the allegations of paragraph 21.

22.    Dependent mineral rights (such as overriding royalty interests, net profits interests and other non-operating interests) created out of a mineral lease are: (1) real rights, (2) incorporeal immovable property interests, and (3) alienable under Louisiana law. *See Duncan v. Paragon Resources, Inc.*, 417 So. 2d 850, 854 (La. App. 1982) ("Overriding royalty interests are classified as real rights and incorporeal immovable property" under Louisiana law); *Terry v. Terry*, 565 So. 2d 997, 1000 (La. Ct. App. 1990) ("A mineral right is an incorporeal immovable. It is alienable and heritable. LSA-R.S. 31:18. The basic mineral rights are the mineral servitude, the mineral royalty, and the mineral lease. These mineral rights are classified as real rights. LSA-R.S. 31:16. Overriding royalties are, therefore, classified as real rights and incorporeal immovables.").

**ANSWER:** ATP avers that the allegations of paragraph 22 of the Complaint constitute legal conclusions to which no response is required and otherwise denies the allegations of paragraph 22.

23.    Under the Conveyance, ATP granted and conveyed to Diamond "an overriding royalty interest in the Subject Interests and in and to the Hydrocarbons in and under and that may be produced and saved from the Subject Interests equal to the Net Profit Amounts attributable to the Subject Interests." Accordingly, whether denominated as an overriding royalty interest, a net profits interest or another non-operating interest, the interest ATP conveyed to Diamond under the Conveyance is a mineral right created out of the Subject Interests that constitutes a real right and an incorporeal immovable property interest in the Subject Interests. As such, the interest conveyed to Diamond under the Conveyance entitles Diamond to a share of the gross production from the Subject Interests as determined by the terms of the Conveyance.

**ANSWER:** In response to the first sentence of paragraph 23 of the Complaint, ATP respectfully

refers the Court to the "Conveyance of Overriding Royalty Interest" for the contents thereof and otherwise denies the allegations of the first sentence of paragraph 23. ATP avers that the allegations in the remainder of paragraph 23 of the Complaint constitute legal conclusions to which no response is required and otherwise denies those allegations.

**E.      ATP Has Failed to Deliver to Diamond the Net Profit Amounts Owned by Diamond.**

24.      The conveyance of the ORRI constitutes an absolute unequivocal conveyance of a vested real property interest and is not property of the estate. Therefore the Net Profit Amounts are the property of Diamond, as opposed to being a claim for payment of debt owed by ATP under the parties' agreements. As a result, ATP acts as the agent of Diamond in delivering the Net Profit Amounts to Diamond.

**ANSWER:**  ATP denies the allegations of paragraph 24 of the Complaint.

25.      ATP has failed to pay to Diamond the Net Profit Amount due July 30, 2012 (the most recent payment date under the Conveyance) which totals of $2,518,123.14. *See* Affidavit of Gary Krenek attached hereto as Exhibit "**J**." Upon information and belief, ATP also has in its possession $3,093,211.53 in Net Profit Amounts owned by Diamond that was required to be delivered to Diamond no later than August 30, 2012. *Id.*

**ANSWER:**  ATP admits that it did not pay Diamond the Net Profit Amount due in the amount of $2,518.123.14 on July 30, 2012, but denies that this is the "most recent payment date" under the "Conveyance of Overriding Royalty Interest" as stated in paragraph 25 of the Complaint. ATP further denies the last sentence of paragraph 25 of the Complaint.

26.      As a result of ATP's failure to pay Diamond the amounts noted above, on about August 17, 2012, Diamond filed the action styled *Diamond Offshore Company v. ATP Oil & Gas Corporation*, Cause No. 2012-47190, in the 215th Judicial District Court of Harris County, Texas, seeking recovery and injunctive relief against ATP for failure to pay Diamond the Net Profits Amounts. The Ancillary Judge for Harris County entered a Temporary Restraining Order ("TRO") ordering that:

ORDERED, ADJUDGED and DECREED that Defendant, together with its employees, agents or other representatives and all persons in active concert or participation with them,

12

> or otherwise who receive actual notice of this TRO, by personal service or otherwise, are enjoined from using or transferring (except to Plaintiff) in any manner, without Plaintiff's consent, all existing and all future Net Profit Amounts owned by Plaintiff; and it is further
>
> ORDERED that Defendant shall immediately transfer to Diamond (i) all past due Net Profit Amounts belonging to Diamond, including, but not limited to, $2,518,123.14 and (ii) all future Net Profit Amounts that belong to Diamond. . . .

See Exhibit "K".

**ANSWER:**  ATP admits that Diamond filed a lawsuit in the District Court of Harris County, Texas on August 16, 2012, *Diamond Offshore Company v. ATP Oil & Gas Corporation*, seeking a temporary restraining order and other relief and that the judge in that matter entered a temporary restraining order containing the language quoted in paragraph 26 of the Complaint. ATP otherwise denies the allegations in paragraph 26 of the Complaint.

F.    **Bankruptcy Filing and Payment Order**

27.    On August 17, 2012 ("**Petition Date**"), ATP filed a voluntary petition commencing the above-captioned chapter 11 bankruptcy case.

**ANSWER:**  ATP admits the allegations in paragraph 27 of the Complaint.

28.    On August 23, 2012, this court entered an "Order Regarding Debtor's Emergency Motion for an Order Authorizing (1) Payment of Funds Attributable to Overriding Royalty Interests in the Ordinary Course of Business and (2) Payment of Funds Attributable to Net Profits Interests Subject to Further Order of the Court Requiring Disgorgement Thereof Pursuant to (A) Sections 105(a), 363(b) and 541(a) of the Bankruptcy Code and (B) The Procedures for Complex Chapter 11 Bankruptcy Cases for the United States Bankruptcy Court for the Southern District of Texas" ("**Payment Order**"). 12-36187 Dkt. 191. As described below, the Payment Order allows the parties to seek a declaration of their rights with respect to the Subject Interests.

**ANSWER:**  ATP admits the allegations in paragraph 28 of the Complaint.

**VI.**
**CAUSES OF ACTION**

F.   C<small>OUNT</small> 1: D<small>ECLARATORY</small> J<small>UDGMENT</small> U<small>NDER</small> **TEX. CIV. PRAC.& REM. CODE, 28 U.S.C. §§ 2201 AND 2202, AND** P<small>AYMENT</small> O<small>RDER</small>

29.   Diamond incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

**ANSWER:**  In response to paragraph 29 of the Complaint, ATP restates and incorporates by reference its responses to paragraphs 1 through 29, inclusive, as if fully set forth herein.

30.   A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. T<small>EX</small>. C<small>IV</small>. P<small>RAC</small>.& R<small>EM</small>. C<small>ODE</small> §37.003(a). An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for. T<small>EX</small>. C<small>IV</small>. P<small>RAC</small>.& R<small>EM</small>. C<small>ODE</small> §37.003(a). The declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree. T<small>EX</small>. C<small>IV</small>. P<small>RAC</small>.& R<small>EM</small>. C<small>ODE</small> § 37.003(b).

**ANSWER:**  ATP avers that the allegations of paragraph 30 of the Complaint constitute legal conclusions to which no response is required and otherwise denies the allegations of paragraph 30.

31.   A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder. T<small>EX</small>. C<small>IV</small>. P<small>RAC</small>.& R<small>EM</small>. C<small>ODE</small> § 37.004(a). A contract may be construed either before or after there has been a breach. T<small>EX</small>. C<small>IV</small>. P<small>RAC</small>.& R<small>EM</small>. C<small>ODE</small> § 37.004(b).

**ANSWER:**  ATP avers that the allegations of paragraph 31 of the Complaint constitute legal conclusions to which no response is required and otherwise denies the allegations of

paragraph 31.

32.    Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. TEX. CIV. PRAC.& REM. CODE §37.011. The application must be by petition to a court having jurisdiction to grant the relief. TEX. CIV. PRAC.& REM. CODE §37.011. If the application is deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith. TEX. CIV. PRAC.& REM. CODE §37.011.

**ANSWER:**  ATP avers that the allegations of paragraph 32 of the Complaint constitute legal

conclusions to which no response is required and otherwise denies the allegations of

paragraph 32.

33.    In a case of actual controversy within its jurisdiction, except with respect to [inapplicable exceptions], any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201(a). Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a). Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C.§ 2202. Accordingly, Diamond also seeks any other necessary and proper relief pursuant to 28 U.S.C.§ 2202, including turnover of funds representing Diamond's property.

**ANSWER:**  ATP avers that the allegations of paragraph 33 of the Complaint constitute legal

conclusions to which no response is required and otherwise denies the allegations of

paragraph 33.

34.    The Payment Order provides that holders of a "Subject Interest" may seek a declaration of their rights with respect to such Subject Interest or proceeds thereof:

ORDERED that the Debtor or any holder of a Subject Interest or any holder of an alleged lien that is alleged to encumber any such Subject Interest or any Statutory Committee shall be entitled to seek a declaration of relative rights with respect to any Subject Interest or proceeds thereof pursuant to a contested matter and to seek expedited

hearing on any motion brought seeking such a declaration; provided, that any party-in-interest may demand that such contested matter be treated as an adversary proceeding with the adversary rules to apply

12-36187 Dkt. 191 (Payment Order, p. 4).

**ANSWER:** ATP admits the allegations in paragraph 34 of the Complaint.

35.     Under the Payment Order, Diamond is a holder of a "Subject Interest."

**ANSWER:** ATP admits the allegations in paragraph 35 of the Complaint.

36.     The Plaintiff seeks a declaratory judgment from this Court under 28 U.S.C. § 2201 *et seq.* that the ORRIs and Net Profit Amounts are (a) property of Diamond and not property of the Debtor's estate, and (b) not executory contract or lease interests that the Debtor may reject under 11 U.S.C. § 365.

**ANSWER:** ATP admits that Diamond seeks the relief alleged but denies that it is entitled to that relief and otherwise denies the allegations of paragraph 36 of the Complaint.

37.     Diamond further seeks a declaratory judgment under TEX. CIV. PRAC.& REM. CODE Chapter 37 and 28 U.S.C. §§ 2201 and 2202, and the Payment Order that the Conveyance of the ORRI constitutes an absolute, present, unequivocal conveyance of vested real property interests, and that the Net Profit Amounts are the property of Diamond, and not property of the ATP bankruptcy estate.

**ANSWER:** ATP admits that Diamond seeks the relief alleged but denies that it is entitled to that relief and otherwise denies the allegations of paragraph 37 of the Complaint.

## G.     COUNT TWO: RECOVERY OF ATTORNEYS FEES UNDER TEX. CIV. PRAC.& REM. CODE § 37.009 AND 28 U.S.C.§ 2202

38.     Diamond incorporates all prior paragraphs into this section to the extent not inconsistent as if fully set forth herein.

**ANSWER:** In response to paragraph 38 of the Complaint, ATP restates and incorporates by reference its responses to paragraphs 1 through 37, inclusive, as if fully set forth herein.

39.     In any proceeding under the Texas declaratory judgment act, the court may award costs and reasonable and necessary attorney's fees as are equitable and just. TEX. CIV. PRAC.& REM. CODE § 37.009. Diamond seeks an award of costs and reasonable and necessary attorneys' fees as are equitable and just.

**ANSWER:**  ATP avers that the allegations in the first sentence of paragraph 39 of the Complaint constitute legal conclusions to which no response is required, admits that Diamond seeks the relief requested, denies that Diamond is entitled to such relief and otherwise denies the allegations of paragraph 39 of the Complaint.

40.     Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment. 28 U.S.C.§ 2202. Such further relief can include an award of attorneys' fees. Accordingly, Diamond also seeks the recovery of its attorneys' fees and costs pursuant to 28 U.S.C.§ 2202.

**ANSWER:**  ATP avers that the allegations in the first two sentences of paragraph 40 of the Complaint constitute legal conclusions to which no response is required, admits that Diamond seeks the relief requested, denies that Diamond is entitled to such relief and otherwise denies the allegations of paragraph 40 of the Complaint.

## AFFIRMATIVE DEFENSES

In support of further and separate defenses to the causes of action brought by Diamond, and without admitting that it has the burden of proof on any fact, issue, element of a claim or any of these matters or that anything stated herein is intended, or shall be construed as, an acknowledgement that any particular issue or subject is relevant to Diamond's allegations, ATP alleges as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Failure to Join an Indispensable Party)

1.      The United States of America through the Department of Interior (the "Government") granted ATP operating rights in certain oil and gas leases (the "Leases") covering offshore areas in the Gulf of Mexico.

2.      The Complaint seeks net profit interest ("NPI") payments attributable to an overriding royalty interest ("ORRI") that ATP allegedly granted to Diamond in "Hydrocarbon" production from these Leases.

3.      Under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331(c), the title that ATP acquired from the Government pursuant to the Leases was that of a lessee and did not constitute absolute title in the lands encumbered by the Leases ("Leased Lands").

4.      The Government has agreed that oil and gas leases do not constitute a fee simple property interest in the Leased Lands.

5.      Nevertheless, in direct conflict with OCSLA, Diamond claims it was granted a fee simple property interest in the Leases and the Leased Lands.

6.      Diamond's allegations subject ATP to a substantial risk of incurring double, multiple or otherwise inconsistent obligations as a result of conflict between Diamond's claimed property right and the position taken by the Government in accordance with OCSLA.

7.      Accordingly, the Complaint should be dismissed under Federal Rule of Civil Procedure 19(a)(1)(B)(ii) if Diamond does not join the Government as a party.

## SECOND AFFIRMATIVE DEFENSE
### (The Conveyances are Financing Agreements, not True Sales)

8.      Diamond alleges that the "Conveyance of Overriding Royalty Interest," effective as of May 22, 2009 (hereafter, the "Conveyance"), represented a true sale of a real property

interest that was complete upon execution, with the result that the NPI payments attributable to the ORRI that was granted by ATP are not included in ATP's estate.

9.     Whether a transaction constitutes a true sale or a disguised financing transaction depends upon the economic substance of the transaction and not on the characterization of the transactions in the conveyance document.

10.     The Conveyance and related agreements have the economic characteristics of a financing transaction and not a true sale, including, without limitation:

a.   ATP transferred the ORRI as security for an outstanding account payable and as security for amounts to become due and owing upon the performance of services in the future;

b.   The dayrate payable under the Drilling Contract was increased under an amended drilling contract signed contemporaneously with the Conveyance to include an amount attributable to a rate of return for Diamond;

c.   The ORRI terminates upon payment of the amount provided for in the Conveyance and reverts to ATP, and Diamond does not retain any further potential upside value of its ORRI;

d.   Consistent with paragraph 10(c), the term of the ORRI is coterminous with the account payable that it secures;

e.   ATP retained any appreciation or depreciation in the value of the Leases;

f.   ATP maintained control of the proceeds of sale of the hydrocarbons, which may be commingled with ATP's funds pending payment;

g.   The Conveyance provides for a default interest rate with regard to late payments of the net profits payable under the ORRI;

h.   The Conveyance and the relevant agreements are treated as loans for accounting purposes; and

i.   Diamond's interest is subject to a cap.

11.     On information and belief, discovery is likely to reveal that Diamond treated the Conveyance and related agreements as a financing arrangement for tax and accounting purposes and not as a true sale.

12.     Based upon consideration of all relevant factors, including, without limitation, those listed above and additional facts to be determined in discovery, the Conveyance is in economic substance a disguised financing transaction.

13.     As a result, the NPI payments attributable to the ORRI granted to Diamond by ATP in the Conveyance constitute cash collateral, subject to use for the benefit of ATP's estate and subject only to the provision of adequate protection to Diamond's interests.

14.     On information and belief, Diamond has not recorded a security interest as to Conveyance or its amendments, and, thus, Diamond has the status of an unsecured creditor of ATP's estate as to the Conveyance.

### THIRD AFFIRMATIVE DEFENSE
### (The NPI Payments Attributable to Diamond's ORRI
### are Executory Contracts and/or Unexpired Leases)

15.     Under OCSLA, the title that ATP acquired from the Government pursuant to the Leases was that of a lessee and did not constitute absolute title in the Leased Lands.

16.     The Leases constitute executory contracts and/or unexpired leases.

17.     As a lessee, ATP could convey to Diamond no greater title in the Leases and the Hydrocarbons produced therefrom than that which it obtained from the Government.

18.     Because the Leases are executory contracts and/or unexpired leases and ATP could convey no greater title to the Leases than it received, the Conveyance, and the ORRI granted thereunder, is a derivative of ATP's executory contracts or unexpired leases.

19.     As a result, the NPI payments attributable to the ORRI granted to Diamond by ATP in the Conveyance constitute cash collateral, subject to use for the benefit of ATP's estate and subject only to the provision of adequate protection to Diamond's interests.

20

## ATP OIL & GAS CORPORATION'S COUNTERCLAIM
## FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Debtor/Defendant and Counter-Plaintiff ATP Oil & Gas Corporation ("ATP") submits this Counterclaim for Declaratory Judgment and Other Relief ("Counterclaim") against Plaintiff and Counter-Defendant Diamond Offshore Company ("Diamond") as follows:

### INTRODUCTION

1.      ATP brings this Counterclaim seeking a declaratory judgment that the net profit payments attributable to the overriding royalty interest that ATP granted to Diamond are property of ATP's estate under section 541(a) of the Bankruptcy Code (the "Code"), 11 U.S.C. § 541(a) (2012), and seeking the entry of an order requiring disgorgement of any net profit payments distributed to Diamond by ATP since ATP filed its voluntary Chapter 11 petition.

### THE PARTIES

2.      ATP is a corporation organized and existing under the laws of the State of Texas with its principal place of business located at 4600 Post Oak Place, Suite 100, Houston, Texas 77027.  ATP is engaged in the development and production of oil and natural gas in the offshore Mediterranean Sea, Gulf of Mexico and North Sea.

3.      Diamond is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 15415 Katy Freeway, Houston, Texas 77094.  Diamond provides deepwater drilling services to oil and gas companies, such as ATP.

### JURISDICTION AND VENUE

4.      The Court has jurisdiction over this matter under section 1334(b) of the Judicial Code, 28 U.S.C. § 1334(b), and through section 157(a), 28 U.S.C. § 157(a), because this Counterclaim "aris[es] in" and is "related to" this Chapter 11 proceeding.

5.      This is a core proceeding pursuant to sections 157(b)(2)(A), (B), (C), (E), (M) and (O) of the Judicial Code, 28 U.S.C. §§ 157(a), 157(b)(2)(A)-(C), (E), (M), (O), as this matter concerns the administration of ATP's estate, allowance or disallowance of claims against ATP's estate, counterclaims by the estate against persons filing claims against the estate, and other relevant matters under section 157(b).  ATP consents to this Court's entry of final judgments related to this Counterclaim.

6.      Venue lies in this district pursuant to section 1408(a) of the Judicial Code, 28 U.S.C. 1408(a), as ATP's place of business and assets have been located here for 180 days preceding commencement of this Chapter 11 proceeding, and under section 1409(a), 28 U.S.C. 1409(a), since the Chapter 11 proceeding is pending in this Court.

## BACKGROUND

### *Farmout Agreement*

7.      The United States of America through the Department of Interior (the "Government") granted ATP operating rights in certain oil and gas leases (the "Leases") covering offshore areas in the Gulf of Mexico.

8.      ATP and Diamond entered into a "Domestic Daywork Drilling Contract," dated August 4, 2008, in which Diamond agreed to provide drilling services until either six wells were drilled or up to a year after the agreement's commencement, whichever occurred later.  The Domestic Daywork Drilling Contract, including its appendices, is attached as Exhibit 1.

9.      As ATP's ability to obtain financing became increasingly strained, it entered into a "Farmout Agreement" with Diamond, which became effective on May 22, 2009, in which ATP agreed to grant Diamond an "overriding royalty interest" ("ORRI") entitling Diamond to receive a limited "net profits interest" ("NPI") in the production of "Hydrocarbons" (*i.e.*, crude oil,

natural gas, casing head gas, condensate, distillate and other liquid or gaseous hydrocarbons) from the Leases.  The Farmout Agreement is attached as Exhibit 2.

10.     As consideration for the ORRI granted by ATP under the Farmout Agreement, Diamond agreed to contribute drilling services for the development of the Leased Lands and to look solely to any NPI payments as satisfaction and discharge for drilling services that it was providing.  At the time of the original conveyance of the ORRI, the parties agreed to convert approximately $116,400,000 in accrued accounts payable for past drilling services performed by Diamond on the properties into the initial contribution toward the ORRI account, and thereafter such amount was increased by invoices for drilling services to be provided in the future by Diamond.

11.     Certain terms under the Domestic Daywork Drilling Contract regarding Diamond's provision of drilling services for the Leased Lands, as well as the payment for those services, were modified contemporaneously with the execution of the Farmout Agreement. These modifications are reflected in the "Amendment to Domestic Daywork Drilling Contract," which is attached as Exhibit 3.

12.     Diamond effectively agreed to finance the majority of ATP's costs of drilling wells on the Leased Lands by agreeing to accept the ORRI in lieu of cash payments for those services it provided.

13.     The Farmout Agreement was amended on or about March 30, 2010, March 25, 2011 and June 3, 2011 to address certain changes to the drilling services being provided by Diamond, and the Amendment to Domestic Daywork Drilling Contract was amended on March 30, 2010, March 25, 2011 and on May 25, 2011 for the same reason.  The amendments to the

Farmout Agreement are attached as Exhibits 4, 5 and 6, and the amendments to the Amendment to Domestic Daywork Drilling Contract are attached as Exhibits 7, 8 and 9.

### *Conveyance of Overriding Royalty Interest*

14.     ATP and Diamond entered into a "Conveyance of Overriding Royalty Interest," also effective on May 22, 2009 (hereafter, the "Conveyance"), by which ATP granted Diamond an ORRI in the Leases and to the NPI attributable to any Hydrocarbons produced and saved from the Leased Lands.  The Conveyance is attached as Exhibit 10.

15.     Even though the Conveyance provided that the ORRI was "non-operating" and "non-expense-bearing," the proceeds that Diamond receives under the Conveyance (*i.e.*, the NPI payments) take into account and are, in fact, reduced by production costs and other expenses.

16.     For instance, the Conveyance provides that Diamond's NPI amount is calculated by deducting from 27% of the gross proceeds collected from the Leases (a) 27% of all expenses incurred by ATP with respect to its production operations and (b) 27% of certain permitted deductions, including taxes, royalties and rentals attributable to the Leases.

17.     The Conveyance was amended on or about March 30, 2010, March 25, 2011, May 25, 2011, March 1, 2012, and June 1, 2012 to address certain changes in the parties' relationship.  These amendments are attached as Exhibits 11, 12, 13, 14 and 15.

### *Post-Petition Payments to Diamond*

18.     On August 17, 2012, ATP filed its voluntary petition for Chapter 11 bankruptcy under section 301 of the Code, 11 U.S.C. § 301.

19.     On August 23, 2012, this Court entered an order (the "Order") requiring that ATP "timely distribute to the parties that [it] believes to be entitled to receive same the proceeds of production received by [ATP] post-petition and attributable to each" ORRI, NPI or perpetual ORRI conveyed by ATP in accordance with the relevant agreements.

20.     The Order also provides that distribution of any proceeds are conditioned on and subject to the execution of a "Disgorgement Agreement" by the party holding the ORRI, NPI or perpetual ORRI and the right of ATP and others to seek "entry of an order requiring [that] some or all of the funds distributed" be disgorged.

21.     Pursuant to the Order, on August 29, 2012, ATP and Diamond entered into a Disgorgement Agreement, which is attached as Exhibit 16.

22.     Also, pursuant to the Order, ATP has distributed to Diamond and Diamond has accepted $12,597,533.65.

**COUNT I**
**(Declaratory Judgment that the Conveyance and Related Agreements Constitute a**
**Disguised Financing Arrangement)**

23.     ATP repeats and realleges the allegations contained in paragraphs 1 through 22 by reference as if fully set forth herein.

24.     An actual controversy exists between ATP and Diamond regarding the proper characterization of the Conveyance, Farmout Agreement and Amendment to Domestic Daywork Drilling Contract (and their amendments), including whether such agreements constitute a "disguised" financing arrangement, which controversy directly affects the administration of ATP's estate and the rights and obligations of the parties.

25.     The economic realities of the transactions contemplated by the Conveyance and Farmout Agreement confirm that such transactions were a disguised financing arrangement.

26.     For instance, the dayrate payable under the Domestic Daywork Drilling Contract was increased under the Amendment to Domestic Daywork Drilling Contract as a way to provide Diamond with a rate of return on the amount financed.

27.     Also, ATP's continuing rights and obligations following the Conveyance, including, without limitation, its right and obligation to operate the properties, to market

production from the properties, and to collect and dispense the proceeds of sale of production from the properties, are rights and obligations normally associated with ownership.

28.     The other operative provisions of the Conveyance and Farmout Agreement are consistent with a traditional financing arrangement and not a sale or absolute conveyance of a property interest.

29.     Accordingly, pursuant to section 2201 of the Judicial Code, 28 U.S.C. § 2201, and Bankruptcy Rule 7001, ATP respectfully requests that this Court enter judgment in favor of ATP and against Diamond declaring that (a) the Conveyance and related agreements constitute a disguised financing arrangement, and (b) the Hydrocarbons produced from the Leases and the proceeds thereof constitute property of ATP's estate under section 541(a) of the Code.

## COUNT II
**(Declaratory Judgment that Diamond's Conveyance and Related Agreements are Executory Contracts or Unexpired Leases Within the Meaning of 11 U.S.C. § 365)**

30.     ATP repeats and realleges the allegations contained in paragraphs 1 through 29 by reference as if fully set forth herein.

31.     An actual controversy exists between ATP and Diamond regarding the proper characterization of the Conveyance and related agreements, including whether the agreements constitute "executory contracts" or "unexpired leases" as those terms are defined in relation to section 365 of the Code, 11 U.S.C. § 365.

32.     Pursuant to the applicable provisions of the Outer Continental Shelf Act ("OCSLA"), 43 U.S.C. § 1331(c), the title that ATP acquired from the Government pursuant to the Leases was that of a lessee and did not constitute absolute title in the Leased Lands.

33.     As a lessee, ATP could convey to Diamond no greater title in the Leases and the Hydrocarbons produced therefrom than that which it obtained from the Government.

34.     Accordingly, pursuant to section 2201 of the Judicial Code and Bankruptcy Rule 7001, ATP respectfully requests that this Court enter judgment in favor of the ATP and against Diamond declaring that: (a) the Conveyance and related agreements constitute executory contracts and/or unexpired leases within the meaning of section 365 of the Code, 11 U.S.C. § 365, and (b) the Hydrocarbons produced from the Leases and the proceeds thereof constitute property of ATP's estate under section 541(a) of the Code.

## COUNT III
### (Declaratory Judgment that Diamond's ORRI is not
### Excluded from the Estate Under 11 U.S.C. § 541(b)(4))

35.     ATP repeats and realleges the allegations contained in paragraphs 1 through 34 by reference as if fully set forth herein.

36.     An actual controversy exists between ATP and Diamond as to whether Diamond's ORRI is excluded as property of ATP's estate based on principles under Texas or Louisiana law.

37.     Section 541(b) of the Code, 11 U.S.C. § 541(b), excludes certain categories of property from a debtor's bankruptcy estate.

38.     In particular, section 541(b)(4)(A)(i) provides that property of the estate does not include any interest of the debtor in hydrocarbons to the extent "the debtor has transferred or has agreed to transfer such interest pursuant to a farmout agreement or any written agreement directly related to a farmout agreement[.]"

39.     Section 101(21A) of the Code, 11 U.S.C. § 101(21A), defines the term "farmout agreement," as used in section 541(b)(4)(A)(i), as a written agreement in which "the owner of a right to drill, produce, or operate liquid or gaseous hydrocarbons on property agrees or has agreed to transfer or assign all or part of such right to another entity[.]"

40.     Although the agreement between ATP and Diamond is styled "Farmout Agreement," it is not a farmout agreement as defined in section 101(21A), because ATP did not agree "to transfer or assign all or part of its right" to "drill, produce, or operate" Hydrocarbons on the Lease Lands to Diamond under that agreement.

41.     Under the Farmout Agreement and its related agreements, ATP simply retained Diamond as an independent contractor to provide drilling services on the Leased Lands.

42.     The ORRI granted to Diamond by ATP does not fall within section 541(b)(4)(A)(i), because the parties have not entered into a farmout agreement as that term is used in that section or defined in section 101(21A).

43.     Section 541(b)(4)(B)(i) provides that property of the estate does not include any interest of the debtor in hydrocarbons to the extent that "the debtor has transferred such interest pursuant to a written conveyance of a production payment to an entity that does not participate in the operation of the property from which such production payment is transferred[.]"

44.     Section 101(42A) of the Code, 11 U.S.C. § 101(42A), defines the term "production payment" as a "term overriding royalty satisfiable in cash or in kind–(A) contingent on the production of a liquid or gaseous hydrocarbon from particular real property; and (B) from a specified volume, or a specified value, from the liquid or gaseous hydrocarbon produced from such property, and determined without regard to production costs."

45.     Given that the NPI payments attributable to Diamond's ORRI take into account a percentage of all the operating expenses and other production costs incurred by ATP, these payments do not meet the definition of "production payment" under Section 101(42A), because they are not "determined without regard to production costs," nor do they fall within section

541(b)(4)(B)(i), since, by bearing a share of operating costs in calculation of the NPI payments, Diamond "participate[d] in the operation" of the Leases.

46.    Section 1333(a)(2)(A) of OCSLA, 43 U.S.C § 1333(a)(2)(A), provides that federal law incorporates state laws to govern a party's interest in "subsoil and seabed of the outer Continental Shelf" only to the extent that the laws "are not inconsistent with . . . Federal Law and regulations" adopted by the Secretary of Interior.

47.    Based on section 1333(a)(2)(A), to the extent that state laws construe the rights granted to ORRI holders under federal oil and gas leases in a manner that excludes the ORRIs from a debtor's estate, these state laws are preempted by section 541(b)(4) of the Code.

48.    Accordingly, pursuant to section 2201 of the Judicial Code and Bankruptcy Rule 7001, ATP respectfully requests that this Court enter judgment in favor of the ATP and against Diamond declaring that (a) Diamond's ORRI is not excluded from ATP's estate under section 541(b)(4) of the Code, and (b) section 541(b)(4) preempts any state law that would require construction of Diamond's ORRI in such a way that would exclude it from ATP's estate.

## COUNT IV
### (Disgorgement)

49.    ATP repeats and realleges the allegations contained in paragraphs 1 through 48 by reference as if fully set forth herein.

50.    The NPI payments that Diamond has received and accepted from ATP pursuant to its ORRI and in accordance with the Order should be disgorged because these proceeds are property of ATP's estate under section 541(a) for the reasons set forth above.

51.    Accordingly, ATP respectfully requests that the Court enter an order commanding that Diamond repay or return $12,597,533.65 to ATP's estate in accordance with the Disgorgement Agreement.

## RESERVATION OF RIGHTS

52.     ATP received a letter from counsel for the Creditors' Committee (the "Committee") on October 26, 2012 demanding that ATP file a counterclaim for fraudulent conveyance under section 548 of the Code, 11 U.S.C. § 548.

53.     A fraudulent conveyance counterclaim brought by ATP would create a potential conflict that could be detrimental to ATP's estate, because such a claim would necessitate testimony from ATP officers who were involved in the transactions at hand.

54.     Thus, in response to the demand from the Committee, ATP declined to bring a fraudulent conveyance counterclaim on the grounds that it would be in the best interests of ATP's estate for any such claim to be brought by the Committee, which would not be burdened with any such conflict.

55.     ATP consents to the intervention of the Committee and to the assertion of a fraudulent transfer claim on behalf of ATP by the Committee.

56.     However, if and to the extent that the Committee is not permitted to intervene in this proceeding or to bring a fraudulent conveyance counterclaim, ATP reserves the right to do so in order to fully protect the interests of all of the constituents of its estate.

## PRAYER FOR RELIEF

WHEREFORE, ATP prays for judgment against Diamond as follows:

a.     Declaration that the Conveyance and related agreements constitute a disguised financing arrangement and that the Hydrocarbons produced from the Leased Lands under the Leases and the proceeds thereof constitute property of ATP's estate under section 541(a) of the Code;

b.     Declaration that the Conveyance and related agreements constitute executory contracts and/or unexpired leases within the meaning of section 365 of the Code and that the Hydrocarbons produced from the Leases and the proceeds thereof constitute property of ATP's estate under section 541(a) of the Code;

c. Declaration that Diamond's ORRI is not excluded from ATP's estate under section 541(b)(4) of the Code and that this section preempts any state law that would require construction of Diamond's ORRI in such a way that would exclude it from ATP's estate;

d. An order requiring Diamond to repay or return $12,597,533.65 to ATP's estate in accordance with the Agreement to Disgorge Funds Upon Order of the Bankruptcy Court that the parties entered into on August 29, 2012;

e. An award of attorneys' fees and costs in favor of ATP; and

f. Any other relief that the Court considers just and reasonable.

Dated: October 31, 2012

Respectfully submitted,

ATP OIL & GAS CORPORATION,

By: /s/ Charles S. Kelley
One of its Attorneys

Charles S. Kelley
William H. Knull, III
MAYER BROWN LLP
700 Louisiana Street, Ste. 3400
Houston, Texas 77002
Tel: (713) 238-2634
Fax: (713) 238-4634

Charles E. Harris, II
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
Fax: (312) 701-7711

## CERTIFICATE OF SERVICE

On October 31, 2012, the undersigned counsel served **ATP Oil & Gas Corporation's Answer and Affirmative Defenses to Plaintiff Diamond Offshore Company's Complaint and Counterclaim for Declaratory Judgment and Other Relief** on the following counsel by electronic court filing:

Berry D. Spears
FULBRIGHT & JAWORSKI L.L.P.
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Tel: (713) 651-5151
*Counsel for Diamond Offshore Company*

/s/ Charles S. Kelley
One of ATP Oil & Gas Corporation's attorneys